IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVIS S R AVIATION, LLC d/b/a | § | |
| CHALLENGER SPARES & SUPPORT, | § | |
| CHALLENGER REPAIR GROUP, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | A-10-CA-367  LY |
| | § | |
| ROLLS-ROYCE DEUTSCHLAND LTD. | § | |
| & CO KG, ROLLS-ROYCE PLC, and | § | |
| ROLLS-ROYCE NORTH AMERICA INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are two motions.  The first is Plaintiffs' Objections, Motion to Quash and

for Protective Order, and in the Alternative, Motion to Modify Defendants' Subpoenas to Southwest

Securities, Inc. and Southside Bank, filed November 4, 2011 (Clerk's Dkt. # 127).  Closely related

to this is Southside Bank's Objections to Defendants' Subpoena to Southside Bank, filed November

9, 2011 (Clerk's Dkt. #133).  Defendants filed their Opposition to Plaintiffs' Objections, Motion to

Quash and for Protective Order, and in the Alternative, Motion to Modify Defendants' Subpoenas

to Southwest Securities, Inc. and Southside Bank, on November 18, 2011 (Clerk's Dkt. # 138); and

Southside Bank restated its objections in its Motion to Quash and for Protective Order, and, in the

alternative, Motion to Modify Defendants' Subpoena to Southside Bank, filed November 28, 2011

(Clerk's Dkt. #139).

The second is Plaintiffs' Second Motion to Compel, filed October 28, 2011 (Clerk's Dkt. #'s

122).  The Non-Parties' Combined Response to Plaintiffs' Second Motion to Compel was filed

November 11, 2011 (Clerk's Dkt. #129).

These motions were referred pursuant to 28 U.S.C. § 636(b)(1)(a), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.

## I.

Plaintiffs Davis S R Aviation, LLC, d/b/a Challenger Spares and Support, and Challenger Repair Group, LLC (collectively, "CSS") are business entities formed by Steve and Karen Davis. Plaintiffs allege that Defendants Rolls-Royce Deutschland Ltd. & Co. KG, Rolls-Royce PLC, and Rolls-Royce North America Inc. (collectively, "RR") tortiously interfered with Plaintiffs' business and contractual relations. Specifically, Plaintiffs allege RR committed business disparagement when RR published a Worldwide Communication which claimed two Rolls Royce aircraft engines and related parts that Plaintiff salvaged from a Bombardier Global 5000 aircraft were "unserviceable," "damaged," and a "potential safety issue." Plaintiffs also allege RR tortiously interfered with a lease agreement with Orion Air Group, LLC ("Orion") and forced Orion to cancel its lease of the engines from Plaintiffs. Plaintiffs seek relief in the form of actual and punitive damages.

## A.

On November 3 and 4, 2011, RR noticed ten depositions to take place between November 8 and 11 without prior consultation with CSS. (Pl. Obj., Mot. to Quash, Prot. Order, Modify Def. Subpoenas at 2). Among the ten, RR served subpoenas on Southside Bank ("Southside") and Southwest Securities, Inc. ("Southwest"), requiring them to designate FED. R. CIV. P. 30(b)(6) representatives for depositions to take place on November 10, 2011, in Tyler, TX at 9:00 a.m. and 1:00 p.m. At this same time, RR also subpoenaed two non-party witnesses for depositions in Irving,

TX. In the subpoenas directed to the banks, RR requested the production of documents.[1]  Plaintiffs

[1]The subpoena served on Southwest sought seven categories of documents:

REQUEST FOR PRODUCTION NO. 1: A copy of your complete loan file regarding Davis S R Aviation, Challenger Spares, Challenger Repair Group, LLC, or their officers, Karen Davis and/or Steve Davis.

REQUEST FOR PRODUCTION NO.2: All materials, documents and due diligence materials provided to you by Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, Karen Davis and/or Steve Davis regarding any loans provided to the above-referenced entities or representatives.

REQUEST FOR PRODUCTION NO.3: Any valuations performed by you or on your behalf, whether complete or partially complete, related to a Bombardier Global 5000 SIN 9211 aircraft.

REQUEST FOR PRODUCTION NO.4: Any documents reflecting amounts paid by Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, Karen Davis and/or Steve Davis to you related to a Bombardier Global 5000 SIN 9211 aircraft.

REQUEST FOR PRODUCTION NO.5: Any documents reflecting amounts paid by Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, Karen Davis and/or Steve Davis to others related to a Bombardier Global 5000 SIN 9211 aircraft.

REQUEST FOR PRODUCTION NO.6: Any loan applications regarding Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, or their officers, Karen Davis and/or Steve Davis.

REQUEST FOR PRODUCTION NO. 7: Any documents or materials related to the Bombardier Global 5000 SIN 9211 aircraft and related loan file and loan documents.

The subpoena served on Southside sought four categories of documents:

REQUEST FOR PRODUCTION NO. 1: A copy of your complete loan file regarding Davis S R Aviation, Challenger Spares, Challenger Repair Group, LLC, or their officers, Karen Davis and/or Steve Davis.

REQUEST FOR PRODUCTION NO.2: All materials, documents and due diligence materials provided to you by Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, Karen Davis and/or Steve Davis

move to quash these subpoenas and seek a protective order, and, in the alternative, to modify the subpoenas. On November 9, 2011, Southside filed objections to the subpoena served on it, and later framed those objections in a motion to quash and for protective order, and, in the alternative, to modify Defendants' Subpoena to Southside Bank.  (Clerk's Dkt. #139.) [2]

### B.

Bombardier, Inc. is a non-party that, along with ten of its personnel, Plaintiffs served with deposition notices and subpoenas duces tecum, requiring the production of documents regarding incidents that Plaintiffs believe are substantially similar to the landing incident at issue in this case. Bombardier objected to a number of the requests for production ("RFP"). On August 24, 2011, Plaintiffs' filed a Motion to Compel (Clerk's Dkt. #91) to which Bombardier filed a Motion to Strike or Abate (Clerk's Dkt. #101), claiming Plaintiffs failed to engage in any meaningful attempt to resolve the matter before filing the motion. On September 20, 2011, Judge Pitman found no meaningful attempt was made to resolve the matter before filing the motion and granted

---

regarding any loans, refinancing of a loan, and/or a line of credit relating to an aircraft or otherwise.

REQUEST FOR PRODUCTION NO.3: Any valuations performed by you or on your behalf, whether complete or partially complete, related to the loan application and documents referenced in Request No. 2, above.

REQUEST FOR PRODUCTION NO.4: Any documents reflecting amounts paid by Davis S R Aviation LLC, Davis S R Aviation LLC d/b/a Challenger Spares and Support, Challenger Repair, Karen Davis and/or Steve Davis to you related to any loans or lines of credit they may have with you.

[2]The time period for responding to the latter motion has not yet passed but because the arguments are essentially identical to those in Southside's earlier Objections and because Plaintiffs have already moved to quash and for a protective order regarding the same subpoena, the issue is ripe for determination now.

Bombardier's Motion to Strike or Abate Plaintiffs' Motion to Compel.  Plaintiffs subsequently conferred with Bombardier to resolve Bombardier's objections to the discovery, but were unsuccessful in resolving all of the disputes.  Plaintiffs then re-noticed the depositions of three Bombardier personnel and a Bombardier 30(b)(6) witness, and filed their second motion to compel, seeking an order requiring Bombardier to provide the discovery.[3]  Pending the resolution of the dispute, the parties agreed to postpone the depositions.

## II.

Before addressing the merits of the motions, the Court notes that paragraph nine of the Court's Scheduling Order (Clerk's Dkt. #32) expressly states that the

> parties shall complete discovery on or before May 19, 2011. Counsel may, by agreement, continue discovery beyond the deadline, ***but there will be no intervention by the Court except in extraordinary circumstances***.

(Emphasis added.)  The Court extended this deadline to June 8, 2011 (Clerk's Dkt. # 34), and the parties thereafter agreed to continue discovery into early November 2011.  The parties now seek court intervention in their discovery though neither of them has made any claim that there are extraordinary circumstances justifying the Court's intervention past the Court-set deadline.  On this basis alone, the Court could deny all of the motions before it.  Indeed, given the number of discovery

---

[3]As Bombardier notes, it is less than clear precisely what depositions Plaintiffs are seeking to compel in their motion, as they have been procedurally sloppy regarding the depositions.  Initially, Plaintiffs served notices on ten Bombardier employees and requested a corporate representative deposition.  Subsequent to the striking of the first motion to compel, Plaintiffs re-served notices concerning three of these employees, and amended the 30(b)(6) notice.  They have not formally withdrawn the original notices.  Further, they have ignored the fact that Bombardier and its employees are not parties to the case, and thus must be subpoenaed as required by FED. R. CIV. P. 45.  Thus, it is not clear if Plaintiffs seek one 30(b)(6) and three individual depositions, or the 30(b)(6) deposition plus the originally-noticed ten individual depositions.  In the interest of clarity, the Court will assume for purposes of this order that Plaintiffs are seeking to compel the depositions of the ten Bombardier employees, and a corporate representative of Bombardier.

disputes the parties appear to be having, the Court is disinclined to become the referee over what appears to be the parties' constant bickering on late-stage discovery issues. Having said this, and solely in the interest of assisting the parties in completing the discovery in this case, the Court will address the motions before it.

### III.

### A.

Under Federal Rule of Civil Procedure 45, a court may quash or modify a subpoena if it subjects a person to undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817-818 (5th Cir. 2004) (citing FED. R. CIV. P. 45(3)(A)(i)-(iv)). In determining whether a subpoena presents an undue burden on a non-party, the Court considers (1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party. *Id.* at 818. The party moving to quash or modify a subpoena has the burden to prove "that compliance with the subpoena would be 'unreasonable and oppressive.'" *Id.* (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D.Tex. 1998)).

Plaintiffs and the Davises request that the Court quash the subpoenas served on the banks and issue a protective order because the dates and times at which RR unilaterally scheduled the depositions would require CSS to be in two cities at the same time; and the information RR seeks from the banks is not relevant to any parties' claims or defenses, is overbroad, and sought for purposes of harassment. CSS asserts that the loan files and documentation related to CSS are simply irrelevant to the claims and defenses in the present litigation because there is no dispute as to how

much CSS paid to acquire the aircraft, including the engines and parts that are the subjects of this litigation. For its part, Southside argues the subpoena is ineffective; seeks information protected by the Gramm-Leach-Bliley Act as well as Southside's internal privacy policy; is overbroad, unduly burdensome, and seeks information not relevant to any party's claim or defense; and seeks information subject to attorney-client privilege.

The arguments made by RR as to why it should be permitted to obtain this last-minute discovery are not compelling. RR makes two arguments. First, it contends that files relating to loans obtained by the Plaintiffs to finance the purchase of the aircraft at issue in this case are likely to contain statements by the Plaintiffs regarding the condition of the aircraft or the engines, and such statements are directly relevant to this dispute. Second, they contend that it is reasonable to assume that the banks themselves sought appraisals of the aircraft's or the engines' value before making any loans, and those appraisals are also directly relevant to this dispute.

In making these arguments, RR overlooks one important fact—its subpoenas request far more than these two categories of information. Further, in neither the motions nor RR's response is there any information whatsoever about the relationship between the banks and Plaintiffs, so the Court has no context within which to evaluate whether RR's requests are overbroad, as Plaintiffs and Southside contend, or whether they can be justified based on these two claims. RR seems to operate under the assumption that Plaintiffs obtained loans for the aircraft from one or both of the banks, but there is no evidence of this before the Court. RR also never states whether the banks and Plaintiffs have had an ongoing banking relationship such that there are likely to be dealings between the banks and Plaintiffs having nothing whatsoever to do with the aircraft at issue in this case. Because this is the

state of the evidence before the Court, it is the context within which the Court must review the discovery requests.

As may be obvious from what has just been said, insofar as the subpoenas request information about loan materials and payments without any limitation, the subpoenas are plainly overbroad. Further, even if the Court assumes that the only dealings between Southside, Southwest and the Plaintiffs have related to the aircraft at issue, the requests are still overbroad. As noted above, RR only identifies two categories of the bank's documents that might be relevant to this case: (1) statements of the Plaintiffs regarding the value of the engines; and (2) any appraisals of the engines. Oddly, only one of the eleven RFPs served on the banks requests either of these narrow categories of documents. And while these documents may fall within the scope of one of the other, much broader requests, this does not cure these defective requests. The Court should not need to state the obvious, but it will do so nonetheless—a party may not serve overly broad document requests and then when they are challenged, ask the Court to enforce them on a much narrower scale than originally served. It is the party's responsibility to frame the requests properly on the front end.

The closest RR comes to making a proper request is with regard to RFP #3 served on Southwest, which requests "[a]ny valuations performed by you or on your behalf, whether complete or partially complete, related to [the aircraft at issue]." Given the claims at issue in this case, valuations performed on the aircraft or engines are discoverable documents. Because they were specifically (and properly) requested, the Court will deny Plaintiffs' motion to quash RR's subpoena as it relates to this request on Southwest. But this is the only specific request in the lot.[4]

―――――――――――――

[4]RFPs 4 and 5 served on Southwest are limited to the aircraft, but request documents demonstrating the amount paid to the bank (No. 4) or to others (No. 5) by Plaintiffs for the aircraft at issue. RR wholly fails to explain why what Plaintiffs paid for the aircraft is relevant or

All four of the requests served on Southside are "generic" and none make any reference to the aircraft at issue. Moreover, Southside has objected in detail to the subpoena. Again, with the information available from the briefing before it, there is no way for the Court to know the extent of the banking relationship between Southside and Plaintiffs. Thus, as written, the RFP's would require the production of all of the records relating to Plaintiffs' dealings with Southside, which could include numerous loans and transactions that have nothing to do with this case. These requests are overly broad, and the subpoena directed to Southside should be quashed.

With regard to the depositions related to the banks, there is little, if any, information provided in RR's briefing demonstrating why the depositions are needed to gather the information the banks may possess related to this dispute. The Court declines to require that the banks submit to depositions at this late stage of the case, and with the minimal record before the Court demonstrating the need for the depositions.

Accordingly, Plaintiffs' Objections, Motion to Quash and for Protective Order, and in the Alternative, Motion to Modify Defendants' Subpoenas to Southwest Securities, Inc. and Southside Bank (Clerk's Dkt. # 127) and Southside Bank's Motion to Quash and for Protective Order, and, in the alternative, Motion to Modify Defendants' Subpoena to Southside Bank (Clerk's Dkt. #139) are **GRANTED**, except that the Court **ORDERS** Southwest to respond to RFP #3 of Defendants' Subpoena to Southwest Securities, Inc. The Court further **ORDERS** that Southwest provide a records custodian's declaration with the documents, consistent with FED. R. EVID. 902(11), demonstrating that the documents are business records under FED. R. EVID. 803(6). Failing the production of such a declaration, Southwest must designate and produce a witness to authenticate

discoverable, and why it cannot (if it has not already) obtain that information from the Plaintiffs.

the documents and address whether they are records of regularly recorded activity. Southwest is **ORDERED** to produce the responsive documents and declaration no later than 14 days from the date of this order.

## B.

The second dispute revolves around Plaintiffs' attempt to obtain discovery from non-party Bombardier, the manufacturer of the aircraft underlying the dispute in this case.  Plaintiffs request that the Court: (1) order Bombardier to produce documents demonstrating what has been historically required to return engines to service after suffering G-loads, hard landings, or similar occurrences, (RFPs # 10, 11, and 20-25); (2) order Bombardier's witnesses to answer questions regarding these topics; (3) order Bombardier to designate a 30(b)(6) witness to testify regarding similar incidents; (4) overrule Bombardier's relevance-based objections to questions related to these incidents that may be posed to deponents; and (5) order the depositions to go forward.

Bombardier responds that the Court should deny the motion because: (1) Plaintiffs ignore FED. R. CIV. P. 45, which requires that they take reasonable steps to avoid imposing undue burden or expense on non-parties like Bombardier; (2) RFP #10 lacks any reasonable parameters and Plaintiffs fail to demonstrate the request is tailored to obtain any evidence of substantially similar incidents; (3) RFP #11 lacks specific analysis showing substantial similarity between the four accidents in the request and the incident in this case; (4) Bombardier's objections to RFPs #20-23 and 25 were not addressed with any specificity by Plaintiffs in their Second Motion to Compel and thus Plaintiffs fail to rebut Bombardier's objections; and (5) RFP #11(d) and 24 also lack specific analysis showing substantial similarity as the RFPs are not limited to the engines, aircraft, or time frame at issue in the present case.

Regarding RFPs #10, 20-23 and 25 , Bombardier has asserted it will suffer undue burden responding to the requests, given the breadth of the documents requested, the time period covered by the request, the lack of particularity with which Plaintiffs' described the requested documents, and the expense and inconvenience to it as a non-party. In their Second Motion to Compel, Plaintiffs do not address the objections to these RFPs with any specificity and choose instead to focus on RFPs #11 and 24. The Court agrees with Bombardier that Plaintiffs have insufficiently responded to these objections. As such, the Court finds Bombardier has met its burden to demonstrate that compliance with RFPs #10, 20-23 and 25 would be unreasonable and oppressive, resulting in undue burden on Bombardier, and thus that the motion to compel responses to these requests should be DENIED.

Regarding RFP #11, Plaintiffs have demonstrated the relevancy of, and their need for, documentation relating to the four incidents described therein. Plaintiffs assert that the four incidents in RFP #11 relate to incidents in which aircraft may have experienced abnormal G-loads or hard landings. Although Bombardier points out that these incidents are not identical in facts and circumstances to the incident in the present case, the Court finds the four incidents to be sufficiently similar to the incident in question to be discoverable, and Bombardier's objections go to the weight that a factfinder might choose to give this evidence. However, to the extent that RFP #11 requests "all documentation" regarding those incidents, it places an undue burden on Bombardier, as that category is too broad and would capture far too many documents.  As the parties' briefing indicates, when an engine is involved in an accident or incident it may not be returned to service without a variety of inspections, tests and certifications.  The process of returning an engine to service would no doubt result in reports of repairs, inspections and tests, and documents certifying that it is suitable for use.  The Court will thus require that Bombardier produce:

(1)   any reports of repairs on the engines at issue in the four incidents described in RFP # 11 that were completed after those incidents;

(2)   reports of the results of inspections or testing conducted on these engines after the incidents;

(3)   any documents which certify the airworthiness (or lack thereof) of these engines after the incidents; and

(4)   any documents which certify that the engines could or could not be returned to service after the incidents.

To the extent RFP #11 requests more documents that this, the Court DENIES the motion to compel.

Regarding RFP #24, while Plaintiffs have asserted the relevancy and need for documentation regarding the G-switch in the incident discussed in RFP #11(d), they fail to address Bombardier's concerns regarding its undue burden in responding to the broader request for G-switch information in RFP #24. The Court agrees with Bombardier that Plaintiffs have insufficiently demonstrated substantial similarity between the accident in this case and the unbounded number of occurrences of G-switch activation called for by RFP #24.  As such, the Court will only order Bombardier to produce G-switch documentation relating to the incident in RFP #11(d).

The Court will further **ORDER** that Bombardier provide a records custodian's declaration with all documents the Court has ordered produced herein, consistent with  FED. R. EVID. 902(11), demonstrating that the documents are business records under FED. R. EVID. 803(6).  Failing the production of such a declaration, Bombardier must designate and produce a witness to authenticate the documents and address whether they are records of regularly recorded activity.

Finally, there is the issue of the many depositions that Plaintiffs request.  In total, they have noticed the depositions of ten specifically-named Bombardier employees and one corporate representative, with the apparent intention of quizzing them regarding the details of the four

incidents set out in RFP #11, as well as about other matters involving returning engines to service after accidents.  As with the document requests, the Court finds that these depositions would be unduly burdensome, and whatever probative value they may have is outweighed by the cost and burden it would impose on Bombardier and Defendants.  Plaintiffs should be able to make the arguments they wish to make related to these other incidents with the documents the Court has ordered Bombardier to produce.  Permitting as many as eleven depositions from this non-party would be burdensome and  unnecessary.  The Court will therefore **DENY** the motion to compel these depositions.

One final note.  Rolls Royce has remained silent regarding this dispute.  If Plaintiffs use the Bombardier documents at trial to argue that Rolls Royce treated the engines in the other incidents differently than the subject engines, the Court anticipates that Rolls Royce may want to offer testimony from the Bombardier witnesses regarding the similarity, or dissimilarity, of these other incidents to the accident at issue here.  Plainly, it would be unfair to allow Rolls Royce to call the Bombardier employees at trial when the Court prevented Plaintiffs from deposing them based on Bombardier's objections—unless, of course, during discovery Rolls Royce identified the Bombardier employees as parties with knowledge of relevant facts.  The Court is not in a position to know whether RR did so, however, because any such information would not have been filed with the Court.  In short, the Court simply wishes to highlight that, absent a prior designation of the Bombardier employees as persons with knowledge, Rolls Royce needs to understand that it too is impacted by the Court's order on this issue.

Accordingly, the Court **ORDERS** that Plaintiffs' Second Motion to Compel (Clerk's Dkt. #122) is **GRANTED IN PART AND DENIED IN PART** as set forth above.  The motion is


**GRANTED** as to the documents and deposition described above, but is otherwise **DENIED**. Bombardier is **ORDERED** to produce the responsive documents and declaration no later than 14 days from the date of this order.

### IV.

As noted at the outset, the parties seem to be having a difficult time resolving disputes in the final stages of discovery in this case. The Court has already reminded the parties of Judge Yeakel's admonition in the Scheduling Order in this case: absent exceptional circumstances the Court will not intervene in post-deadline discovery. The official discovery deadline in this case was June 8, 2011. While the parties agreed to conduct discovery past this time, they did so with the understanding that the Court would not referee disputes that arise after the deadline unless there were exceptional circumstances to justify that. The undersigned fully intends to enforce the requirement of that "exceptional circumstances" exist before the merits of any further discovery disputes in this case are addressed. In addition, in a recent telephone conference, Judge Yeakel informed the parties that they need to finish the discovery in this case. The undersigned echoes Judge Yeakel's directive. This case is going to trial in February 2012, and the parties need to focus on trial preparation, not discovery disputes.

SIGNED this 30th day of November, 2011.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE