IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVIS S R AVIATION, LLC d/b/a<br>CHALLENGER SPARES & SUPPORT,<br>CHALLENGER REPAIR GROUP, LLC,<br><br>Plaintiffs,<br><br>V.<br><br>ROLLS-ROYCE DEUTSCHLAND LTD.<br>& CO KG, ROLLS-ROYCE PLC, and<br>ROLLS-ROYCE NORTH AMERICA INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | A-10-CV-367  LY |

## ORDER

Before the Court are Rolls Royce Defendants' Motion for Sanctions and to Compel and Incorporated Memorandum in Support and Request for Expedited Hearing, filed January 4, 2012 (Clerk's Dkt. # 145); and Plaintiffs' Response to Defendants' Motion for Sanctions and to Compel, and Motion to Strike Parts of the Motion, filed January 11, 2012 (Clerk's Dkt. # 153). The matters were referred pursuant to 28 U.S.C. § 636(b)(1)(a), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas.

**I.**

Plaintiffs Davis S R Aviation, LLC, d/b/a Challenger Spares and Support, and Challenger Repair Group, LLC (collectively, "CSS") have brought this action against Defendants Rolls-Royce Deutschland Ltd. & Co. KG, Rolls-Royce PLC, and Rolls-Royce North America Inc. (collectively, "Rolls") alleging tortious interference with Plaintiffs' business and contractual relations. By way of its motion, Rolls asserts Plaintiffs have violated basic and obvious discovery obligations by failing

to preserve key evidence, delaying production of evidence and failing to produce responsive documents. The undersigned conducted a hearing on the motion on January 13, 2012.

## II.

This is not the first discovery dispute the parties have brought to the attention of the Court. The undersigned will begin where it left off the last time the parties sought a ruling on a discovery matter—by again noting paragraph nine of the Court's Scheduling Order (Clerk's Dkt. #32):

> parties shall complete discovery on or before May 19, 2011. Counsel may, by agreement, continue discovery beyond the deadline, **_but there will be no intervention by the Court except in extraordinary circumstances_**.

(emphasis added.) Judge Yeakel granted a motion to extend this deadline to June 8, 2011 (Clerk's Dkt. # 34), and the parties thereafter agreed to continue discovery into early November 2011.[1] Two other dates are worthy of note. First, the initial and only written discovery requests made by Rolls in this case were propounded on July 20, 2011. Second, this case is set for a final pretrial conference on February 1, 2012, with trial also in the month of February.

In the undersigned's prior order, the parties were warned "the Court is disinclined to become the referee over what appears to be the parties' constant bickering on late-stage discovery issues." (Clerk's Dkt. # 141 at 6). The undersigned further admonished the parties when they agreed to conduct discovery past the deadline set in the Court's scheduling order "they did so with the

---

[1] Counsel for Rolls suggested during the hearing that Judge Yeakel had extended the discovery deadline in this case during an August 30, 2011 status conference. A review of the transcript reflects that *the parties* agreed to extend the discovery deadline and presented a stipulation to that effect. However, Judge Yeakel declined to sign or enter the stipulation into the record, and made abundantly clear any change agreed to by the parities was not a matter for his consideration. (Clerk's Dkt. # 116). Thus, the discovery extension beyond June 8, 2011, was the very sort of agreement among counsel that is squarely within the terms of ¶ 9 of the Scheduling Order.

understanding that the Court would not referee disputes that arise after the deadline unless there were exceptional circumstances to justify that." (*Id*. at 14).

Rolls obviously recognizes the need to make this showing, and asserts in its motion that the matters raised in the motion constitute the requisite "exceptional circumstances." However, the motion simply focuses on the harm allegedly done to Rolls by Plaintiff's discovery deficiencies and fails to show why the alleged harm rises to the level of exceptional circumstances. Thus, at the outset of the hearing the undersigned sought an explanation from Rolls as to the nature of the exceptional circumstances. Once again, the only "explanation" proffered by counsel for Rolls focused on the alleged harm it suffered from the delays in Plaintiffs' production.[2]

Rolls has wholly failed to establish the extraordinary or exceptional circumstances necessary for the Court to intervene in this discovery motion filed on the eve of trial. It is clear from the motion, response, and attachments thereto that Rolls did not begin to engage in the discovery process until more than a month after the close of the discovery period set out in the Scheduling Order (as amended) for this case. It is further clear that Rolls knew of the issues it raises in the motion as early as the first week of September and certainly before the end of November. Yet, Rolls waited until the first week of January, less than one month before the final pretrial conference in this case, to raise the alleged deficiencies in Plaintiffs' discovery production. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (showing of "extraordinary circumstances" includes suggestion that party is faultless in delay). *See also Baker v. Cain*, 2008 WL 3243993, at *2 (Aug.

---

[2]The Court places the term "explanation" in quotes because it was less than clear to the Court precisely what Mr. Little was arguing in his disjointed, and at times rambling, response to the Court's questions on this issue. In contrast, in the span of three or four minutes, Mr. Rosenberg was able to give the Court a cogent, albeit ultimately unpersuasive, response to the question.

7, 2008) (in surveying cases applying "extraordinary circumstances" in tolling deadline, tolling generally limited to external factors beyond party's control).

Further, the alleged delays and piecemeal nature of Plaintiffs' production complained of in Rolls' motion frankly do not rise to the level of extraordinary circumstances. Rather, it appears from the attachments to the motion and responses that Plaintiffs responded promptly to Rolls' written discovery. Counsel for the parties thereafter exchanged relatively professional correspondence which raised (on Rolls' part) and addressed (on Plaintiffs' part) concerns with the production. Production was apparently completed some four months after the discovery originally propounded by Defendants. Although some delay occurred, it was well within the norms for a case involving a large number of potentially responsive documents. The only reason why Rolls is suffering the harm it alleges is that trial is a month away. But this is the result of Rolls choosing to wait until July of 2011 to propound written discovery. Had the discovery been served in July *2010*, for example, Rolls would have been in a position to raise these issues well before the close of discovery. Because Rolls has not shown the circumstances to be extraordinary or exceptional, the motion should be denied. *See Molina v. Equistar Chems., LP,* 2006 WL 2706767, at *3 (S.D. Tex. Sep. 18, 2006) (delay in seeking discovery was not extraordinary circumstance justifying reconsideration of summary judgment).

### III.

Notwithstanding what has just been said, the Court will briefly address one aspect of Rolls' motion—that part in which Rolls contends that Plaintiffs have engaged in spoliation of evidence. Given the seriousness of this charge, it merits discussion even though Rolls' motion raising it is untimely.

The duty to preserve material evidence arises once a party reasonably anticipates litigation, and the duty persists throughout the litigation.  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Kronish v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 681 (S.D. Tex. 2007); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  Spoliation is defined as "the destruction of evidence, or the significant and meaningful alteration of a document or instrument." *Andrade Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 605, 615 (E.D. Tex. 1998).  Judge Rosenthal provides a thorough summary and analysis of spoliation law in *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598 (S.D. Tex. 2010).  As she notes, to obtain sanctions for spoliation of evidence, a party must establish

> (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was ''relevant'' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* at 615-16 (citing *Zubulake*).  Rolls referred frequently at the hearing to a recent decision from Magistrate Judge Roby of the Eastern District of Louisiana.  There, Judge Roby notes that to demonstrate spoliation a party must prove relevant evidence was destroyed after the duty to preserve arose and the evidence lost would have been favorable to that party, as well as demonstrate that the destruction was done in bad faith.  *Yelton v. PHI, Inc.*, 2011 WL 6100445, at *10, *12 (E.D. La. Dec. 7, 2011).

Even a cursory review of Rolls' motion demonstrates that Rolls has failed to prove the sort of facts necessary to support sanctions for spoliation of evidence.  Rolls spends an inordinate amount of time complaining about Plaintiffs' or their counsel's failure to impose a written "litigation hold" on all of Plaintiffs' employees, without sufficient focus on identifying the information that was

allegedly lost as a result.[3] When Rolls does identify allegedly lost evidence, it points to only two categories: (1) audio recordings allegedly lost from Mr. Davis' iPhone; and (2) documents that might have been lost from the computer of a party who had been a consultant to Plaintiffs and who Plaintiffs have designated as a testifying expert, when that computer "dumped" in 2010.

As to the first category, Rolls notes that Mr. Davis apparently recorded many conversations relating to the aircraft and engines, and states:

> These materials include secret tape recordings made by CSS regarding investigations associated with other Rolls-Royce engines, as described by Davis to Federal Aviation Administration official Mark Riley. In particular, Davis claimed to Riley that he possessed a recording of a mechanic who claimed Rolls-Royce engines were involved in certain events but only subjected to "hard landing" inspections, as opposed to tear down inspections. These materials are key because Plaintiffs allege that by publicizing the need for a tear down inspection, Rolls-Royce treated the engines in this case differently than they had treated engines in other matters. CSS has never produced this "secret" recording.

(Clerks Dkt. #145 at 5). Even assuming the conversation with a mechanic took place and was recorded, and was then lost from Davis' iPhone after a time at which it should have been preserved, there would not be spoliation meriting sanctions because, as described, the recording would not have been favorable to Rolls. The mechanic's alleged statement supports Plaintiffs' theory of the case. Indeed, the lack of such a recording, coupled with Davis' assertion that he had the described conversation with the mechanic, would seem to provide Rolls with impeachment material if in fact, as Rolls claims, "CSS regularly and secretly recorded all, or at least virtually all, of its telephone

---

[3]The Court fully appreciates the importance of a party ensuring that evidence is preserved once the party becomes aware of a claim, and the significance of "litigation holds" in this regard. But failure to send a written "litigation hold" memo is largely irrelevant in the actual spoliation analysis, because—litigation hold or not—to show spoliation one must still demonstrate the loss or destruction of evidence. At most, the lack of a hold would be relevant to the state of mind issue.

conversations with individuals, third parties, and government regulators related to the Aircraft and its Engines."[4]

The second category of allegedly lost evidence relates to the computer of a party who was a consultant to the Plaintiffs, and who Plaintiff designated as a testifying expert in September 2011.[5] Once again, Rolls' argument that this evidence was intentionally destroyed is lacking. First, Rolls completely fails to address the fact that the information at issue was contained on the computer of a non-party to the case, and fails to explain why Mr. Doss had a duty to preserve anything on his computer. Second, the apparent "dump" of information on the computer occurred in 2010, well before Doss was designated to be a testifying expert in the case. Further, Plaintiffs contend that none of the information Rolls wants from Doss' computer ("correspondence with the FAA office with respect to plaintiff CRG's efforts to be a FAA certified repair station") is even relevant to this case, and the Court tends to agree, as the primary question in the case is whether Rolls made false statements regarding what was needed to place the engines at issue back into service. And finally, Rolls completely fails to offer any evidence that Doss' loss of the data took place with the sort of bad faith or culpable mental state required to show spoliation.[6]

---

[4] *See* Clerk's Dkt. # 145 at 5. It is notable that the quoted statement is prefaced by the phrase "Rolls-Royce understands" that this is true, and that there is no citation to any deposition or other evidence for this statement.

[5] It is not clear exactly when Plaintiffs designated Mr. Doss as a testifying expert, since such designations are not filed with the Court. The Court assumes, however, that the designation took place on the Plaintiffs' expert designation deadline, which the parties had agreed to extend until September 12, 2011. *See* Clerk's Dkt. # 56-1 and 57.

[6] Judge Rosenthal summarizes very well the state of the law in the Fifth Circuit regarding what is meant by "bad faith" in this context, and contrasts that with the "gross negligence" and other standards that have been applied in other circuits. *Rimkus*, 688 F. Supp.2d at 614-15.

In sum, Rolls' claim that there has been spoliation of evidence meriting sanctions in this case is woefully inadequate. So not only are the arguments "too late," but they are also "too little." Even if the Court considered the spoliation arguments timely it would deny Rolls the relief it requests.

### IV.

For all of these reasons, the Court **ORDERS** that Rolls Royce Defendants' Motion for Sanctions and to Compel (Clerk's Dkt. # 145) be **DENIED**.

SIGNED this 20th day of January, 2012.

_/s/ Andrew W. Austin_
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE